IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:17-CR-112-3 |
| | : | |
| **v.** | : | |
| | : | |
| **TERRELL WATERS** | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is the Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence by a Person in Federal Custody (Doc. 165) filed by Defendant Terrell Waters ("Mr. Waters"). For the reasons outlined below, the court will deny the motion.

**I.    BACKGROUND**

On December 20, 2017, a grand jury returned an indictment against Terrell Waters containing three counts against him. The first count accused Mr. Waters of engaging in a conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). The second count accused Mr. Waters of actually carrying out the armed bank robbery in violation of the same statutory provisions. The third count accused Mr. Waters of carrying a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A). On February 26, 2018, Mr. Waters signed a plea deal with the government. He pleaded guilty to Count 2, commission of an

1

armed bank robbery, and Count 3, "carrying and brandishing a firearm in relation to a crime of violence." (Doc. 92, p. 1.)

The plea deal also advised Mr. Waters as to the sentence he might receive, obligated him to make certain representations to the court that affected his sentencing, and included multiple provisions whereby he agreed that he had thoroughly reviewed and understood the deal. For example, Mr. Waters agreed that "defendant understands that the total, maximum possible sentence for all charges" included "life in prison," (*id.*, p. 4.), and that "Count 3 carries a mandatory minimum period of imprisonment of 7 years" (*id.*, p. 3). The agreement also included a shared stipulation that the parties would jointly represent to the court that, in the course of committing the armed bank robbery, Mr. Waters "struck" "a bank customer" "in the face," inflicting upon him "an injury more severe than bodily injury, but not as severe as serious bodily injury, as those terms are defined in the" United States Sentencing Guidelines. (*Id.*, p. 9.) Finally, Mr. Waters agreed that he had thoroughly reviewed every paragraph of the plea agreement with his counsel, fully understood the agreement, and voluntarily entered it. (*See id.*, pp. 28-29.)

On March 28, 2018, the court heard Mr. Waters's motion to enter a plea of guilty. During the hearing, Assistant United States Attorney Scott Ford read parts of the plea agreement aloud, including the provision stating that Mr. Waters's mandatory minimum sentence for Count 3 was seven years imprisonment. (*See* Doc.

106, 5:15-21.) Upon being questioned by the court, Mr. Waters agreed that Count 3 subjected him to a minimum mandatory sentence of seven years imprisonment. (*Id.*, 8:20-25.) Mr. Ford also stated that the government would have shown at trial that Mr. Waters brandished a gun during the robbery and struck a customer in the face, causing "injury more severe than bodily injury, but not as severe as serious bodily injury." (*Id.*, 12:3-9.) When asked if he disagreed with Mr. Ford's explanation of the facts, Mr. Waters stated that he had no dispute. (*Id.*, 12:21-23.) Mr. Waters also agreed that he reviewed each paragraph of the plea agreement with counsel and agreed to it. (*Id.*, 6:24-7:1, 7:22-25.) On April 4, 2018, Mr. Waters provided a written statement to the court, stating, *inter alia*, that he "accept[ed] responsibility for brandishing a firearm during said bank robbery in violation of 18 U.S.C. § 924(c)(1)(A) and 2." (Doc. 123, p. 7.)

On September 5, 2018, the United States Probation Office filed a Presentence Report on Mr. Waters. (*Id.*) It listed seven past convictions or guilty pleas of Mr. Waters—including prior offenses of robbery and possession of an illegal firearm. The PSR, however, only attributed criminal history points to three of his past seven convictions. Mr. Waters's counsel filed multiple objections to the PSR, including strenuous objections to criminal history points being allocated to his prior convictions of harassment and failure to file income tax. (*See* Doc. 124.)

On October 22, 2018, the court held a sentencing hearing for Mr. Waters. After considering Mr. Waters's objections, the court overruled them. The court then sentenced Mr. Waters to the statutory minimum for Count 3 of 84 months imprisonment and the guideline minimum for Count 2 of 63 months imprisonment—a total sentence of 147 months imprisonment.

Close to a year later, Mr. Waters filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing his appointed counsel was ineffective in advising him on his plea deal and representing him during his sentencing hearing. (Doc. 165.) The government did not file a timely response, so the court entered an order to show cause instructing it to do so. (Doc. 172.) The government proceeded to file a motion requesting an extension of time to respond, which the court granted. (Doc. 175.) The government then filed a response. (Doc. 180.) The time for Mr. Waters to file a reply brief has expired. The matter is thus ripe for review.

## II. STANDARD OF REVIEW[1]

The Sixth Amendment entitles those accused of crimes to counsel who will provide all services needed "to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of

---

[1] Mr. Waters has filed his brief *pro se*. The court will therefore construe it liberally in his favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

counsel." *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In evaluating an ineffective assistance of counsel claim brought under 28 U.S.C. § 2255, the court must examine two factors:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.... Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*United States v. McKines-El*, No. 3:99-CR-035, 2005 WL 1215953, at *3 (M.D. Pa. Apr. 26, 2005) (quoting *Strickland*, 466 U.S. at 687).

In *Strickland*, the United States Supreme Court explained the proper method for analyzing each factor. First, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. It is easy, through hindsight bias, to unfairly scrutinize counsel's strategic and tactical decisions "after conviction or [an] adverse sentence"; to avoid this, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. For example, counsel does not have a duty to investigate every potential fact relevant to the case; instead, they must be free to place reasonable limits on the scopes of their investigations. *Id.* at 690-91. Second,

regarding prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is" less than a preponderance of the evidence—it is "a probability sufficient to undermine confidence in the outcome." *Id.*

### III. DISCUSSION

#### a. Mr. Waters Has Not Shown His Guilty Plea Can Be Nullified.

A guilty plea is invalid for ineffective assistance of counsel if the movant shows: (1) counsel fell below a reasonable standard of care for attorneys practicing criminal law; and (2) it is reasonably probable that, but for counsel's ineffective advice, the movant would have not pleaded guilty. *Nahodil*, 36 F.3d at 326 (citing *Hill v. Lockhart*, 474 U.S. 52, 56-59 (3d Cir. 1994)). "Section 2255 is a proper medium for raising challenges to the voluntariness of a guilty plea after the judgment of sentence has been imposed." *Id.* at 330. "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (internal quotations omitted).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of

attorneys in criminal cases." *Id.* at 56 (internal quotations omitted). "In the context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill*, 474 U.S. at 59); *accord Jackson v. Superintendent Graterford SCI*, 721 F. App'x 128, 134 (3d Cir. 2018) ("Even assuming [the defendant's] plea was not knowing, voluntary, and intelligent when entered, [he] has not carried his burden of showing prejudice."); *Hill*, 474 U.S. at 60 ("Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").

Here, Mr. Waters argues that he should not be bound by various parts of his plea agreement because he was improperly advised on it. These arguments fail because Mr. Waters cannot satisfy either *Strickland* prong. The record shows that the plea deal was clearly explained to Mr. Waters, both by counsel and by the court, and that he repeatedly stated as much. While Mr. Waters appears to take issue with parts of the plea deal, he has not explained why he would have failed to understand any particular part of the agreement. For example, Mr. Waters complains that the plea deal should not truly have bound him to the facts that he brandished a gun and injured a man during the armed robbery. Yet, when the court specifically drew his

attention to these parts of the plea deal, he testified that he understood them. He also admitted that both of these things were true in a letter he wrote to the court where he claimed to be accepting responsibility for the extent of his crimes. Mr. Waters has thus failed to show that his counsel compelled him to agree to a plea deal he did not understand or agree with. Mr. Waters has also not gone so far as to say that he would have rejected the plea and gone to trial if he had better understood any particular provision of the plea deal. Thus, having failed to satisfy either *Strickland* prong, the court will not liberate Mr. Waters from his plea agreement.

        b. <u>Mr. Waters's Counsel Diligently Represented Him Concerning His Sentence Enhancements.</u>

Mr. Waters argues that his counsel failed to adequately represent him concerning three separate sentence enhancements. The court will address each in turn. First, Mr. Waters argues that his attorney failed to adequately represent him concerning the court's imposition of a sentence enhancement for the infliction of bodily injury upon a victim. As shown above, Mr. Waters specifically agreed to this fact in: (1) his plea deal; (2) his testimony before the court; and (3) in a letter he wrote to the court. As such, it is not clear what Mr. Waters believes his attorney should have done at the sentencing hearing. Even if he had raised an objection to this enhancement, the court would have properly overruled it because Mr. Waters's own admissions were sufficient for the court to find against him on it. This argument thus fails to satisfy either *Strickland* prong.

Second, Mr. Waters argues that his counsel erred in permitting the court to count his prior harassment conviction as an additional point in his criminal history. Mr. Waters's counsel, however, specifically and thoroughly objected to the court counting the harassment conviction as a prior criminal history point. He in fact raised the substance of the complaints Mr. Waters now brings before the court. This complaint thus fails to satisfy the first *Strickland* prong. Even if Mr. Waters's counsel could have raised a more thorough objection to this enhancement, however, his declining to do so did not inflict any prejudice on Mr. Waters. If the court did not count the harassment conviction, this would decrease Mr. Waters's total criminal history count by 1 point. A reduction of one point would only have shifted Mr. Waters from criminal Category IV to Category III. This would have moved Mr. Waters's sentencing guideline range for Count $2^2$ from 63-78 months to 51-63 months—another range inclusive of the sentence Mr. Waters ultimately received of 63 months. As such, the court is unpersuaded that there is a reasonably probability that it would have sentenced Mr. Waters differently had it granted this objection. Mr. Waters thus cannot show prejudice.

Third, Mr. Waters argues his prior conviction for failure to file his income taxes should have been better objected to by counsel. This argument fails for the

---

[2]  Any change in the sentencing guidelines would have been irrelevant to Mr. Waters's sentence for Count 3 because the court gave him the statutory minimum sentence.

9

same reason his second argument does. Mr. Waters's counsel diligently objected to the court counting his prior income tax conviction towards his criminal history points. Moreover, even if the court had granted both this objection and the objection to his harassment conviction, it would still have only lowered him to a criminal history category of III, which his sentence of 63 months would still fall within. Thus, this third objection also fails both *Strickland* prongs.

      c. <u>Mr. Waters's Counsel Did Not Act Deficiently By Failing to Cite *Dean v. United States*.</u>

Mr. Waters argues counsel acted negligently by failing to cite *Dean v. United States*, 137 S. Ct. 1170 (2017) and argue that it supported a downward departure for Mr. Waters. This argument fails both *Strickland* prongs. First, counsel's reluctance to cite the *Dean* case or argue for a downward departure is not a sufficient basis for finding he failed to offer counsel to the defendant. Counsel's decision not to cite a particular case or raise a particular argument may very well have been a strategic choice meriting deference by the court. *Strickland*, 466 U.S. at 689. This is particularly true here, where Mr. Waters engaged in conduct during the commission of the crime that would have rendered the court unsympathetic to any request for a downward departure.

Second, had Mr. Waters's counsel specifically cited the *Dean* case in his brief and asked for a downward departure, it would not have changed the court's reasoning. In *Dean*, the United States Supreme Court held that a court sentencing a

10

person under § 924(c) may take into consideration the harshness of that sentence when deciding the defendant's total sentence. *Id.* at 1176. Here, at sentencing, the court was aware of the fact that Mr. Waters's Count 3 sentence included a mandatory minimum of 84 months imprisonment and that it had to be served consecutive to his Count 2 sentence. Citing the *Dean* case would not have changed the court's reasoning in any manner. Thus, Mr. Waters did not suffer any prejudice by his counsel not arguing for a downward departure by citing *Dean*.

      d. <u>The Plea Agreement's Discussion of § 924 Unambiguously Bound Mr. Waters to a Minimum Sentence of Seven Years.</u>

Mr. Waters's final argument is that his plea agreement was ambiguous regarding which particular subsection of § 924(c) he was pleading guilty to, thus entitling him to the most lenient part of the statute. Mr. Waters's argument is creative, but the court disagrees that the plea agreement is ambiguous. Under § 924 (c)(1)(A)(i)-(iii), the mandatory minimum sentence for the use of a gun during the commission of a violent offense turns on how the gun was used: five years if the gun was simply in the offender's possession; seven years if the gun was brandished; and ten years if the gun was fired. Here, the plea agreement expressly states that Mr. Waters was pleading guilty to "carrying ***and brandishing*** a firearm in relation to a crime of violence," (Doc. 92, p. 1 (emphasis added)), and that Count 3 carried with it a minimum sentence of seven years (*Id.*, p. 3). If Mr. Waters examined § 924(c) in deciding whether to plead guilty, the only reasonable conclusion he could have

come to, even as a lay person, would have to have been that he was pleading guilty to § 924(c)(1)(A)(ii), thus binding him to a seven-year mandatory minimum. Even if he was not looking at the statute, the plea agreement explicitly stated that he was agreeing to a crime with a mandatory minimum of seven years, thus impressing upon Mr. Waters the same core implication. He is thus not entitled to be sentenced under the shorter five-year minimum.

## IV. CONCLUSION

For the reasons outlined above, the court will deny the motion to vacate. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: July 2, 2020